# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# BIG STONE GAP DIVISION

| | | |
|---|---|---|
| **ALICIA M. BALLARD,** | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 2:11CV00036 |
| | ) | |
| v. | ) | **OPINION** |
| | ) | |
| **MICHAEL J. ASTRUE,** | ) | By: James P. Jones |
| **COMMISSIONER OF** | ) | United States District Judge |
| **SOCIAL SECURITY,** | ) | |
| | ) | |
| Defendant. | ) | |

*Lewey K. Lee, Lee & Phipps, PC, Wise, Virginia, for Plaintiff. Nora Koch, Acting Regional Chief Counsel, Region III, and Robert W. Kosman, Special Assistant United States Attorney, Office of the General Counsel, Social Security Administration, Philadelphia, Pennsylvania, for Defendant.*

In this social security case, I affirm the final decision of the Commissioner.

I

Plaintiff Alicia M. Ballard filed this action challenging the final decision of the Commissioner of Social Security (the "Commissioner") denying her claim for disability insurance benefits ("DIB") pursuant to Title II of the Social Security Act ("Act"), 42 U.S.C.A. §§ 401-433 (West 2012). Jurisdiction of this court exists pursuant to 42 U.S.C.A. § 405(g).

Ballard filed for benefits on March 21, 2008, alleging that she became disabled on September 13, 2007. Her claim was denied initially and upon reconsideration. Ballard received a hearing before an administrative law judge ("ALJ"), during which Ballard, represented by counsel, and a vocational expert testified. The ALJ denied Ballard's claim, and the Social Security Administration Appeals Council denied her Request for Reconsideration. Ballard then filed her Complaint with this court, objecting to the Commissioner's final decision.

The parties have filed cross motions for summary judgment, which have been briefed. The case is ripe for decision.

II

Ballard was born on August 2, 1983, making her a younger individual under the regulations. 20 C.F.R. § 404.1563(c) (2011). Ballard has a high school education[1] and has worked in the past as a customer service representative, a housekeeper, a pharmacy technician, and a residential aide. She originally claimed she was disabled due to social phobia, panic attacks, depression, and anxiety.

On September 15, 2007, Ballard presented to the emergency department and complained of increased depression and anxiety over the past several days. She

---

[1] Ballard is also taking online computer classes through Mountain Empire Community College.

reported that she did not feel like going to work since being prescribed Topamax the previous week. Ballard was advised to discontinue Topamax and discharged in satisfactory condition.

Six days later, Ballard sought treatment from Kellie W. Brooks, N.P., complaining of stress due to problems with her husband. Ballard also reported that going to work had become difficult because of an affair with a co-worker. (R. at 233.) Brooks diagnosed Ballard with anxiety/depression, premenstrual dysphoric disorder, and situational stress. She prescribed Paxil. Brooks also discussed the possibility of a two-month leave of absence from work due to stress.

In December 2007, Susan G. Myers, LCSW, performed an initial psychological assessment of Ballard. Ballard complained of anxiety, depression, panic attacks, anger, crying spells, and decreased energy and concentration. Myers indicated that Ballard was oriented with intact thought processes, but that she had a depressed mood and anxious affect. She assessed a GAF score of 50.[2] Aside from one follow-up visit in January 2007, Ballard never returned for further treatment with Myers.

---

[2] The GAF scale is a method of considering psychological, social and occupational function on a hypothetical continuum of mental health. The GAF scale ranges from 0 to 100, with serious impairment in functioning at a score of 50 or below. Scores between 51 and 60 represent moderate symptoms or a moderate difficulty in social, occupational, or school functioning, whereas scores between 41 and 50 represent serious symptoms or serious impairment in social, occupational, or school functioning. See Am. Psychiatric Ass'n, *Diagnostic and Statistical Manual of Mental Disorders* 32 (4th ed. 1994).

Ballard returned to Brooks in March 2008.  She reported that she had never gone back to work due to nerves, and that she was trying to get disability benefits. (R. at 230.)  Brooks indicated that Ballard was alert, oriented, pleasant, and denied any suicidal or homicidal ideation.  She noted that Paxil seemed to help with Ballard's anxiety and depression. (R. at 230.)

In August 2008, B. Wayne Lanthorn, Ph.D., performed a consultative psychological examination at the request of the state agency.  Ballard complained of concentration problems, social anxiety, crying spells, and panic attacks.  She indicated that Paxil had been somewhat helpful, and that she was able to shop with friends at Wal-Mart, do her own laundry, and do some housecleaning. (R. at 242-43.)  Dr. Lanthorn noted that Ballard was oriented in all spheres, denied ever having hallucinations, and had no signs of delusional thinking or evidence of psychotic processes.  He reported that Ballard had no real signs of ongoing anxiety, depression, or emotional conflict aside from an adjustment disorder with respect to her marital separation. (R. at 244.)  Dr. Lanthorn opined that Ballard was capable of functioning in a forty-hour per week competitive job.  He assessed a GAF score of 71.

Leslie E. Montgomery, Ph.D., a state agency psychologist, reviewed Ballard's medical records in August 2008.  She determined that Ballard had an adjustment disorder with mixed anxiety and depressed mood, but that her mental

impairment was not severe. Dr. Montgomery noted that Ballard had only mild restrictions of activities of daily living, mild difficulties in social functioning, and moderate difficulties in maintaining concentration. She also performed a mental residual functional capacity assessment, indicating that Ballard had no marked limitations.

Ballard sought treatment from Kaye Weitzman, a licensed social worker, from September 2008 through January 2009. During this time period, Ballard complained of a history of anxiety and depression. Ballard reported stress due to family issues, but stated that she was "doing better" in December 2008. (R. at 272.) Weitzman noted that Ballard was alert and fully oriented, displayed fair to good judgment, had a sad mood and anxious affect, and denied any suicidal/homicidal ideation. She diagnosed Ballard with severe social phobia and assessed a GAF score of 40.

In October 2008, Brooks wrote a letter to a potential psychiatrist indicating that Ballard was having great difficulty with crowds and social interactions. As a result, Brooks opined that Ballard was unable to work at any occupation. (R. at 394.)

In January 2009, Karen Baker, M.Ed., evaluated Ballard at Frontier Health. Although Ballard reported symptoms of anxiety, depression, and agoraphobia, Baker assessed a GAF score of 60. Ballard was scheduled to return for an

individual therapy session in two weeks, but she never returned for further treatment.

In February 2009, Joseph I. Leizer, Ph.D., a state agency psychologist, independently reviewed the medical records and determined that Ballard had an adjustment disorder with mixed anxiety and depressed mood, but that her mental impairment was not severe.  Dr. Leizer noted that Ballard would have moderate difficulties in social functioning and in maintaining concentration.  He also performed a mental residual functional capacity assessment, indicating that Ballard had no marked limitations.

Ballard returned for treatment with Brooks in May 2009.  Ballard indicated that her medications were helping and that "things seemed to be getting better." (R. at 317.)  Brooks noted that Ballard's mood was stable.

In June 2009, Weitzman evaluated Ballard's mental ability to do work-related activities.  Weitzman indicated that Ballard had marked and extreme limitations due to severe social phobia.

In September 2010, Robert S. Spangler, Ed.D., performed a psychological evaluation at the request of Ballard's attorney.  Ballard reported that she experienced panic attacks when she had to go somewhere alone, had a long history of social anxiety, and spent most of the day worrying. (R. at 399-400.)  Ballard's mental status examination was largely normal — she was alert, cooperative, and

oriented; seemed socially confident; denied suicidal or homicidal ideation; demonstrated good concentration during testing; and demonstrated judgment and insight consistent with average to high average intelligence. (R. at 398, 400.) Dr. Spangler diagnosed Ballard with social anxiety disorder, major depressive disorder, and generalized anxiety disorder. He assessed a GAF score of 50-55, and opined that Ballard's mental impairments would cause her to miss more than two days of work per month. At the conclusion of the evaluation, Dr. Spangler also completed a form on which he opined that Ballard had poor or no useful ability to relate to co-workers, deal with the public, deal with work stresses, or understand complex or detailed job instructions.

At the administrative hearing held in October 2010, Ballard testified on her own behalf. Ballard confirmed that counseling and medication helped control her stress and anxiety. She also stated that she was capable of performing daily activities such as cleaning house, washing dishes, doing laundry, driving, shopping, and completing online computer classes. John Newman, a vocational expert, also testified. He classified Ballard's past work as a pharmacy technician as light, semi-skilled; and her past work as a customer service representative as sedentary, unskilled.

After reviewing all of Ballard's records and taking into consideration the testimony at the hearing, the ALJ determined that she had severe impairments of

major depressive disorder, generalized anxiety disorder, social anxiety disorder, dysmenorrhea, and diagnosed ovarian cystic lesion one year ago, but that none of these conditions, either alone or in combination, met or medically equaled a listed impairment.

Taking into account Ballard's limitations, the ALJ determined that Ballard retained the residual functional capacity to perform a range of light work that involved only four to five brief interactions with supervisors, and only occasional interactions with co-workers and the public in a work environment. The ALJ stated that Ballard was able to maintain attention and concentration for tasks involving short and simple instructions as well as some detailed instructions. The vocational expert testified that someone with Ballard's residual functional capacity could work as a food preparation worker, a laundry/dry cleaning worker, and a packer. The vocational expert testified that those positions existed in significant numbers in the national economy. Relying on this testimony, the ALJ concluded that Ballard was able to perform work that existed in significant numbers in the national economy and was therefore not disabled under the Act.

Ballard argues that the ALJ's decision is not supported by substantial evidence because the ALJ improperly determined Ballard's residual functional capacity by failing to give proper weight to the opinions of Brooks, Weitzman, and Dr. Spangler. Ballard also contends that the ALJ failed to appropriately consider

the treatment records of Weitzman and Brooks, as well as Brooks' October 2008 opinion. For the reasons below, I disagree.

### III

The plaintiff bears the burden of proving that she is under a disability. *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972). The standard for disability is strict. The plaintiff must show that her "physical or mental impairment or impairments are of such severity that [s]he is not only unable to do h[er] previous work but cannot, considering h[er] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C.A. § 423(d)(2)(A).

In assessing DIB claims, the Commissioner applies a five-step sequential evaluation process. The Commissioner considers whether the claimant: (1) has worked during the alleged period of disability; (2) has a severe impairment; (3) has a condition that meets or equals the severity of a listed impairment; (4) could return to her past relevant work; and (5) if not, whether she could perform other work present in the national economy. *See* 20 C.F.R. § 404.1520(a)(4) (2011). If it is determined at any point in the five-step analysis that the claimant is not disabled, the inquiry immediately ceases. *Id.*; *McLain v. Schweiker*, 715 F.2d 866, 868-69 (4th Cir. 1983). The fourth and fifth steps of the inquiry require an

assessment of the claimant's residual functional capacity, which is then compared with the physical and mental demands of the claimant's past relevant work and of other work present in the national economy. *Id*. at 869.

In accordance with the Act, I must uphold the Commissioner's findings if substantial evidence supports them and the findings were reached through application of the correct legal standard. *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation marks and citation omitted). Substantial evidence is "more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). It is the role of the ALJ to resolve evidentiary conflicts, including inconsistencies in the evidence. *Seacrist v. Weinberger*, 538 F.2d 1054, 1956-57 (4th Cir. 1976). It is not the role of this court to substitute its judgment for that of the Commissioner. *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990).

Ballard argues that the ALJ's decision is not supported by substantial evidence. She presents two arguments.

First, Ballard argues that the ALJ improperly determined her residual functional capacity by failing to give proper weight to the opinions of Brooks, Weitzman, and Dr. Spangler. Specifically, Ballard asserts that the ALJ failed to

properly weigh the opinions of Brooks, Weitzman, and Spangler on the severity of her mental impairments.

In weighing medical opinions, the ALJ must consider factors such as the examining relationship, the treatment relationship, the supportability of the opinion, and the consistency of the opinion with the record. 20 C.F.R. § 404.1527(d) (2011). Although treatment relationship is a significant factor, the ALJ is entitled to afford a treating source opinion "significantly less weight" where it is not supported by the record. *Craig*, 76 F.3d at 590.

In the present case, the ALJ considered the opinion of Brooks, but gave little weight to her assessment for several reasons. First, as a nurse practitioner, Brooks is not an acceptable medical source and therefore her findings do not carry the same weight as a "medical opinion." 20 C.F.R. § 404.1513(a) (2011). Second, Brooks' opinion that Ballard was unable to work at any occupation is due no special significance, as such statement is an opinion reserved to the Commissioner. *See* 20 C.F.R. § 404.1527(e)(1) (2011). Nevertheless, this finding is not supported by Brooks' own treatment notes. For example, Brooks frequently noted that Ballard was alert, oriented, pleasant, and denied any suicidal or homicidal ideation. (R. at 230, 317.) Furthermore, she indicated that Paxil seemed to help with Ballard's anxiety and depression. (R. at 230.) "If a symptom can be reasonably

controlled by medication or treatment, it is not disabling." *Gross v. Heckler*, 785 F.2d 1163, 1166 (4th Cir. 1986).

With respect to Weitzman, the ALJ's assessment of her opinion is also supported by substantial evidence. As a licensed social worker, Weitzman's findings do not carry the same weight as a "medical opinion." 20 C.F.R. § 404.1513(a); *see Lilly v. Astrue*, No. 5:10-00750, 2011 WL 4597369, at *4 (S.D.W. Va. Sept. 30, 2011). Even so, Weitzman's opinion is inconsistent with her own treatment notes as well as the objective medical evidence of record. For example, Weitzman diagnosed Ballard with severe social phobia and assessed a GAF score of 40; yet, she noted that Ballard was fully oriented, displayed fair to good judgment, denied any suicidal or homicidal ideation, and was "getting better." (R. at 272-74.) In addition, Weitzman's opinion is inconsistent with Dr. Lanthorn's normal mental status examination, as well as his conclusion that Ballard had a current GAF score of 71. (R. at 240-45.)

Similarly, the ALJ's assessment of Dr. Spangler's opinion is supported by substantial evidence. The ALJ considered the opinion of Dr. Spangler but gave little weight to his assessment. First, Dr. Spangler's relationship with Ballard was limited — his opinion is based on a one-time examination, made at the request of Ballard's attorney. Second, Dr. Spangler's opinion is contrary to his own mostly normal clinical findings. For example, Dr. Spangler opined that Ballard had poor

or no useful ability to relate to co-workers, deal with the public, or deal with work stresses; however, he noted that Ballard was alert and oriented, cooperative, socially confident, had good concentration, denied suicidal or homicidal ideation, and had judgment and insight consistent with average to high average intelligence. (R. at 398, 400, 403.)  Furthermore, Dr. Spangler's check-the-box opinion is inconsistent with the other clinical evidence of record, such as the objective findings of Brooks, Weitzman, Dr. Lanthorn, and Dr. Montgomery.

Next, Ballard contends that the ALJ failed to appropriately refer to the treatment records of Weitzman and Brooks, as well as Brooks' October 2008 opinion.  This argument has no merit.  The ALJ is not required to recite the entire medical record in detail so long as the court can discern the basis of his decision. *See Fargnoli v. Massanari*, 247 F.3d 34, 42 (3d Cir. 2001).  In this case, the ALJ specifically mentioned Weitzman's June 2009 opinion, which obviously implicated Weitzman's and Brooks' treatment records.  The ALJ also noted Ballard's history of mental symptoms and signs of social phobia, panic attacks, depression, and anxiety, all of which are set forth in the treatment notes of Weitzman and Brooks. Although the ALJ did not list every detail about Ballard's treatment from Brooks and Weitzman, he did appropriately discuss their general findings.  Furthermore, as previously discussed, Brooks' October 2008 opinion that Ballard was unable to work at any occupation is due no special significance, as such statement is an

opinion reserved to the Commissioner. *See* 20 C.F.R. § 404.1527(e)(1). Accordingly, I find that substantial evidence supports the ALJ's decision.

IV

For the foregoing reasons, the plaintiff's Motion for Summary Judgment will be denied, and the defendant's Motion for Summary Judgment will be granted. A final judgment will be entered affirming the Commissioner's final decision denying benefits.

DATED:   May 17, 2012

/s/  James P. Jones
United States District Judge